Case No. 16-1128 Competitive Enterprise Institute, et al. Petitioners v. United States Department of Transportation, et al. Mr. Katzmann for the petitioners, Ms. Morrissey for the respondents. May it please the Court, my name is Sam Katzmann. I'm here on behalf of Consumer Advocates for Smoke-Free Alternatives for the Competitive Enterprise Institute and for individual petitioner Gordon Cummings. In 1987, a panel of this Court jokingly remarked that when some people will find ambiguity, even when it comes to a no smoking sign, this is such a case, Your Honor. You know, that was brought up in the Microsoft antitrust argument. Judge Sentel said to former Judge Bork, you needn't find ambiguity in a no smoking sign. He said, yes, and I take advantage of it many times. I was referring not to that case, but to this Court's decision in the international UAW v. General Dynamics. And in fact, DOT is attempting to take advantage of that here. DOT claims that e-cigarettes fall under its authority to interpret the ban on smoking enacted by Congress in the year 2000. That in fact, that statute, because it failed to define smoking, gave DOT the authority not only to define it, but to refine that definition in the light of changing technologies and changing passenger behavior. One analogy it provides for that is a situation that came up before this Court in the 2011 Cablevision case involving a statute that concerned satellite broadcasting, and somehow this became, and the Court properly construed that as in fact giving the agency, the FCC, authority to actually regulate new technologies as they develop. A no smoking sign is a far cry from a statute involving satellite programming. How are you defining smoking? Smoking, I believe, should be defined in terms of the conventional definition at the time that that statute was enacted. And if you go back to the dictionaries of that time, they all involve certain, the same elements of what smoking involves. That is, it is the combustion of vegetable matter, almost always tobacco, but not necessarily tobacco, that produces both vapor and smoke. There may be some, several definitions, several dictionaries that give slightly varying definitions, but frankly, the fact that you have outlier definitions does not change the plain meaning of that term. That term is plain, it is simple, it is not a license for DOT to go into an exercise in interpretation. And in fact, that is where this case should have ended. That is where this case should have ended, but what we have are... They have a whole separate independent argument, as you're well aware, on the safe and adequate. I don't want to take you off this, but we need to get to that at some point. Absolutely. So let me just explain. First of all, e-cigarettes are relatively small, battery-powered, handheld devices that contain an atomizer that is powered by the battery, a small capsule containing a liquid that quite often contains nicotine in solution, and electronics as well. And the nicotine is derived from tobacco. Yes, yes, but we are not talking here about a tobacco product, which FDA was found by this court in Soterra to have jurisdiction over under not the Food, Drug, and Cosmetics Act, but the Tobacco Act, which in fact taught of tobacco products. This is not a tobacco products case. Though it's noteworthy that in that case, in Soterra, this court remarked that FDA presented no evidence that anyone had been harmed by an e-cigarette. And that, I submit to you, is still the situation now. It is still the situation now. The second point to remember... Is that the test, though? Is it anyone? Or does it exclude those who are actually smoking the cigarette, or inhaling the vapor, or whatever? It's the secondhand consequence that they regulated on the basis of poison. I'm sorry, in Soterra? Or in this case? In this case. In this case, yes, that is correct. DOT is focusing on the second, possibly the thirdhand effects. But the important thing is first, every airline company has prohibited the use of e-cigarettes on its planes. When we challenged DOT to provide a single instance of anyone who had suffered discomfort under the Safety and Adequacy Provision, which is another statute which DOT claims is independent, but which we will contest, they said, of course we can't be expected to have come up with any such cases, because the airlines have in fact banned e-cigarette use. But Schiller actually came forward as such a person. Excuse me? Schiller came forward as such a person. I'm not catching the name. Sorry. Schiller, a person named Schiller, came forward in the comment period as such a person, saying that she had been exposed to secondhand e-cigarette vapor and experienced, quote, immediate respiratory irritation. It's at JA-185. Yes, I believe, yes. She, this did not occur on an airline. This occurred in a location where someone deliberately blew e-cigarette smoke in her face, and she said that she, as an asthmatic, did in fact suffer irritation as a result. You don't mean e-cigarette smoke. I'm sorry? No, no. It will happen occasionally, but I believe in vapor, and this is vapor not from burning, but vapor from heating. Yes, and she said, in fact, it strikes me that the circumstances that she described could well have amounted to an intentional assault. That is not the situation that's occurred on any airplane flight to our knowledge. Well, it's evidence that the vapor can be irritating, isn't it? It can. That's possible. On the other hand, the number of asthmatics who are also smokers talk about how the fact that they have access to e-cigarettes has incredibly improved their health and has made what used to be torturous flights, because they had to risk nicotine withdrawal, has made that bearable to them. But the point is that after four and a half years after the close of the comment period in this rulemaking, DOT could not point to a specific instance, airline instances, of any passenger having been discomforted. Because, as you said, the airlines don't allow it. The airlines don't, and so the question becomes, and this circuit has a series of cases, if there is no problem, if there is no problem, the whole rationale for having a rule becomes extremely questionable. Now, I think DOT does provide a real... Why don't the airlines allow it? Excuse me? Why don't the airlines allow it? I believe they thought that the number of passengers might object, that passengers might think that what was an e-cigarette was actually a real cigarette, and that this might cause problems for them. But this is the policy they adopted. What's important, though, is that... Do any airlines allow that you're aware of? I think a number of small charter flights were allowing it until this rule, which actually expanded the ban to cover charter flights that had previously been exempt. Well, they had previously not imposed, self-imposed a ban. Excuse me? They had not previously self-imposed a ban. No. Right? No. Well, once again, DOT could have looked to those flights and seen, did we get any instances of passenger complaints there? And the fact is, they did not. They did not come up with anything. So, what DOT really points to, I think, as the real... The question arises in my mind. Are there any commercial airliners, passenger airlines, that allow e-cigarettes? To my knowledge, no. I believe DOT makes that quite plain in its general literature. And the... So the standing question for the... Competitive Enterprise is not a membership organization, is it? No. Right. But you have a staff member who claims that... What's the effect on him, regardless of how DOT rules or how we rule or whatever, is still going to not be able to have e-cigarettes? Gordon Cummings is a CI employee, as laid out in his affidavit, who travels quite frequently, both on pleasure and on business. In the past, when this was simply an airline company policy, he occasionally did vape quite discreetly. If he was asked to stop, he'd stop. But his ability to vape made a number of flights quite bearable for him. It's his view, it's his very substantiated view, in the face of the DOT ban, he faces, if he is caught, not just a request to please stop that, but substantial penalties as well. So I believe on that basis, that does keep him standing. Plus, DOT itself says, absent our rule, they're expressed about this, absent our rule, airlines may well start changing their policies. Then the case would be right. But the problem is, it was even the threat of civil penalties under the DOT rule that has made flights much worse off for Mr. Cummings. In the past, he was a vaper. He was a discreet vaper. He stopped when he was requested. He never caused any problem. Now he can't do that. And that's the same situation described by Elaine Keller in her affidavit. She was a founding member of this consumer group, Consumers for Smoke-Free Alternatives, which now numbers over 2,000, 200,000 members. Airline flights for her have become very unbearable, not as a result of company policy, but as a result of the threat of DOT-imposed fines. As a result, she no longer flies as frequently. She quite often drives instead. And the substitution of driving for flying raises some very severe risk issues, risk and safety issues, that DOT totally ignores. One of the points about Mr. Cummings... They talked about substitution in the rule. Excuse me? They talked about substitution in the rule. Yes, and they said that people who were worried about nicotine withdrawal, such as passive members, could use other alternatives. But those alternatives are very unsatisfactory for a number of people. Alternative modes of transportation, alternative means of getting nicotine. Alternative means of getting nicotine. Right. And they did not address the safety risk of driving rather than flying, except to the extent to say that, well, perhaps some people now will substitute more flying because they're happier about the e-cigarette rule. A total piece of speculation. I think they said that perhaps a few people will drive rather than fly, but it will be very few, because most people who would like to continue to get nicotine will use some other form for the period of a flight. Or they will have much more uncomfortable flights. Given that they're not changing, that they're not introducing a ban, but rather introducing a more substantial penalty than the airlines can impose, it was quite reasonable to suggest that there wouldn't be a big effect on the number of travelers. We think that issue could have borne more analysis, just in terms of a discussion by DOT that, yes, some people, as a result of doing the substitution, may in fact incur a higher risk of death than they otherwise would. So I wanted to explain why the safety and adequate ground, in fact, is not independent as DOT claims it is. If you look at the structure of DOT's Federal Registry Rule, the entire discussion of hazard, of possibly dangerous chemicals, all takes place on the pages dealing with the statutory ban and with DOT's alleged authority to refine its definition. That's where all that discussion takes place. What page is this? This is on, let's see, 11420 of the actual decision. I don't have the joint appendix number handy. That all takes place before DOT gets to talking about its authority to regulate under the safe and adequate ground. Once it gets to the safe and adequate ground, it basically incorporates those previous discussions. Now, remember, those discussions were the following. DOT decides e-cigarettes fall under the statutory ban, and then it poses to itself the question, is there any reason we should now exempt e-cigarettes from the statutory ban? And it looks at studies which all talk about potential, potential effects at certain concentrations, none of which document any adverse effect of secondhand e-cigarette vapor, and all of which call for future research. And then when it comes to safe and adequate, DOT says, well, some people might be concerned about the chemicals discussed in those studies. Now, it's one thing if you're talking, and DOT also differentiates safe and adequate from harm. It says we can make a finding of a violation of the safety and adequate issue without any definitive proof of harm. We simply need to have evidence of passenger discomfort. Look, it's one thing when you're talking harm to take a precautionary principle approach and say these chemicals need to be shown to be safe. I think it's questionable, but at least it's arguable. But when you're talking about passenger comfort, the notion of applying a precautionary principle to that, I think, defies any justification whatsoever. If there are reports of problems, DOT can deal with them at that point. Remember, we're talking about reports of coughing, reports about skin rashes, whatever. In the face of those reports, DOT is well equipped to deal with that. But to say we need a showing that there will be no passenger discomfort when all of its studies dealt not really with passenger discomfort but with safety, I think, shows this was an afterthought. It was not an independent ground. It was an afterthought just like its claim that they can regulate this under safe and deceptive practices was also an afterthought. When you say passenger discomfort, you're talking about irritation, what they call irritation, right? That would be one aspect of it. Another would be passengers worrying about what they might be inhaling if they were to see someone vaping momentarily. Okay, well, there is talk about that, especially in the NPRL, about the subjective concern. But the only objective one is actual irritation, correct? No. Irritation of the throat. I think DOT has quite a bit of leeway. It relies heavily on the 1986 case action on smoking and health. But even there, the court noted that this did not authorize, its holding did not authorize, did not authorize that every single detail of airline service be regulated under that provision. It noted, for example, that in the FAA Modernization Act, Congress itself talked about the respect that should be given to market forces. Well, let me ask you this. If they have rock-solid evidence, which they don't, if they have rock-solid evidence of secondary vapor having secondary harm, irritating people's throats and eyes and so on, would you say it's beyond their capacity under action for smoking and health? No, no. Action for smoking and health was based on a very strong record, as EFT itself characterizes it, of extreme passenger discomfort and irritation at second-hand smoke. But there's nothing like that in this record. I understand your point on that. Okay, so that's the crux of your point, isn't it? It's about the quality of the evidence, not the legal standard. And also the fact that, as we contend, those other two issues, those other two bases, one of which was actually withdrawn right after we challenged it in our opening brief, even the remaining basis of safety and adequacy was, in fact, an afterthought, whose outcome really, in a sense, was almost preordained by its treatment of its alleged authority regarding no smoking. Even if passengers, according to your argument, perceive harm, and that's totally baseless on their part, isn't that a harm, the very fact that they perceive it as harmful? In a theoretical sense, yes, but quite a few people put comments into the record about how they are irritated, about how they perceive harm from the smell of strong colognes, from the fact that they may be sitting next to someone who has had too many drinks and is sweating off certain chemicals, which can be chemically documented. Whether it's enough... And smokeless tobacco is permitted, right? Yes, it is. In fact, Mr. Cummings uses that... And you have to have a cup. I mean, that's pretty disgusting if you're sitting next to someone... But Mr. Cummings, as he's related to this affidavit, has been forced into relying on that method, which he regards as less healthy, solely because of the DOT rule. Okay, we'll give you some time on rebuttal. Thank you. May it please the Court, Tara Morrissey for the Department of Transportation. The Department relies on two sources of statutory authority to support its reasonable decision to protect airline passengers from the potential harms of electronic cigarettes. First, the statutory smoking prohibition.   The statutory smoking prohibition easily encompasses modern smoking technologies. Can I ask something at the outset? Do you... Does anything turn on which ground is the basis for a decision, if we were to agree with you on one or the other ground? Thank you, Judge Kavanaugh. I do want to clarify that the statutory smoking prohibition is somewhat broader in that it applies to interstate and foreign transportation. The safe and adequate provision applies only to interstate transportation. So it's not really an independent ground, then? It's an independent source of authority. It's not as broad. And we don't... Petitioners have made no arguments with respect to the application of the Rule 2 foreign air transportation. If this Court were to uphold it solely under the safe and adequate ground, the foreign transportation question would remain open. Okay. The term smoking in the smoking prohibition is ambiguous. Congress left a gap for the agency to fill. It did not define the term smoking. It did not specify the devices to which the prohibition applies. And petitioners failed to mention that Congress also included an express and specific delegation of authority to the agency to apply the prohibition and thus to define its scope. This scheme grants ample authority to the agency to apply the smoking prohibition to modern smoking technologies consistent with the statutory purposes, which are threefold, to improve air quality within the confined aircraft cabin with limited ventilation, second, to reduce the risk of adverse health effects on passengers and crew members. What is the risk? What's the probability of risk to the health of anybody in the cabin? There are risks, Your Honor, that are not fully developed, but we know that electronic cigarettes... What's the probability? If the probability is one out of a thousand, do you still think that you have authority to regulate? Under the statutory smoking prohibition, yes, Congress decided to prohibit smoking, and this is a form of smoking the agency has... But that kind of begs the question. You're defining smoking because of the consequences of it, and yet you can't quantify any of the consequences. Correct, Your Honor. The evidence is still developing on this, and we do know that... So in other words, is it your theory of regulatory authority that an agency like DOT can regulate on the basis of, well, we don't know, therefore we prohibit it? With respect to the safe and adequate provision, yes, we are regulating based on passenger discomfort that's grounded in health concerns, and with respect to the statutory smoking... So the burden becomes on the opponents of the rule to prove that it's absolutely safe, and if they can't prove that, then we can prohibit it.  In 1973, when the Civil Aeronautics Board first began to regulate smoking, the evidence showed that low levels of contaminants did not present a health hazard to nonsmokers. It wasn't until... Are you familiar with Professor Sunstein's article on the plausibility principle? I'm not, Your Honor. I'm sorry. He has a rather deep and dense article, but basically what he says is the principle you've just expounded is incoherent, totally incoherent as a regulatory basis. Not helpful. Your Honor, the chemicals, there's evidence of the chemicals that are emitted by electronic cigarette aerosols. Yeah, the carcinogens, right? Nicotine, carcinogens, formaldehyde. Every vegetable that you eat contains carcinogens. That's how plants protect themselves from insects and disease. Do the e-cigarettes have more carcinogens in them than a helping of broccoli? I'm not sure about the quantification, Your Honor. What this is doing is it's introducing a new source of contaminants into the aircraft cabin with limited ventilation that high-risk passengers, children, babies, the elderly, pregnant women, are inhaling. And eating a vegetable may be quite different from inhaling it. And our evidence shows that inhaling is... The question is whether forcing the vegetable on their neighbor is the issue. Well, that's true. No one has to eat the broccoli, right, that you're eating. Here, there's nowhere for these... You can't smoke it. There's nowhere for the passengers to go. The action on smoking and health directly applies here. This is just an application of that. We have an even stronger basis for regulating because the agency didn't even know about the harms. And here we have... All of the evidence has shown that there is some harm and that there is a risk here. And it's not entirely understood because evidence will continue to develop. It wasn't until a decade after the Civil Aeronautics Board started to regulate smoking that the Surgeon General's report came out about the second-hand effects of regular tobacco smoke. But you're saying that... If you're correct about the hazard, you're saying that enables you to define this as smoking, right, when it didn't exist at the time the statute was passed. That's correct, Your Honor. It doesn't have the same characteristics as smoking. It's a different form of putting something into the air. This is the new way to smoke. But I thought you were making a separate argument here. This was your safe and adequate argument. I transitioned to that in light of the questions about the health risks. But the smoking argument is not dependent on that, correct? Correct. The Congress... We don't dispute that traditional tobacco products were the particular manifestation of the problem at the time in 1987. But Congress did not freeze that conception of smoking in time. It used an undefined term. It didn't specify the devices. What do you think the best definition of smoking is? The best definition is to inhale and exhale fumes or smoke of tobacco or similar substances. It does not require combustion or burning. Petitioners' definition is far too narrow. That wouldn't even include devices that have existed in the past and that may exist that heat tobacco without burning it, such as certain types of water hookahs, heat not burned tobacco cigarettes that existed that actually heat tobacco leaves without burning them. Combustion is not an indispensable requirement, and Congress certainly did not say that. Instead, it delegated authority to the agency to determine... Your definition of smoke to smoke is to inhale and exhale products that are derived from tobacco. That's what you said. The smoke or fumes of tobacco or similar substances. If you inhale and exhale, it doesn't necessarily create a cloud of vapor or smoke or anything else. In this situation, these electronic cigarettes do emit clouds of chemicals, Your Honor. And I should be clear that when I am talking about the definition of smoking, that's a dictionary definition that supports our view, but the agency has reasonably defined smoking to be the use of a tobacco product, electronic cigarettes. They argue, I think, with some evidence to support it from the dictionary definitions, that most of the dictionary definitions are not what you just said. I disagree, Your Honor. We've cited a couple, and there are many more, and they overwhelmingly do not specify combustion or burning in the dictionary. Are the dictionary definitions adopted before the advent of e-cigarettes? I'm sorry, before electronic... Before the advent of e-cigarettes. Oh, yes, definitely, Your Honor. Before the advent. So how do we know they took into account e-cigarettes? It's the same problem that one has with the statutory definition. Congress... I thought your point was to offer these definitions as of the time the statute was passed. That's correct. I mean, this is sort of the conception of smoking that existed. When the statute was passed. At the time, and it did not freeze. It does not foreclose. It certainly does not unambiguously foreclose. But clearly it precedes, as Justice Randolph was asking, it clearly precedes the advent of e-cigarettes. They're unknown. Yes, that's correct. And Congress, and this Court has held in Sabre, for example, that just because Congress could not have foreseen a development in the industry does not mean that it is limited to the circumstances of historical enactment. What is the status? I knew this at one time, but I've forgotten now. The development of e-cigarettes, were they... Did they exist at the time that Congress passed the smoking ban? The initial smoking ban was a temporary ban in 1987. It's been amended several times since then. Was that the seating requirement, or was it a total ban? That was a ban on flights two hours or less. Two hours or less. Were e-cigarettes in existence at the time that was passed? No. E-cigarettes did not come over really in their current form until 2006, 2007 into the United States, Your Honor. So this is a really recent development. In the United States. What about in Europe? They were in Europe a few years before that. The current form was developed in China in about 2003. This applies to planes. The smoke ban applies to planes taking off in Europe to come to the United States, right? Right. That's correct. This is the new way to smoke. These devices, they function like cigarettes. They're used like cigarettes. They release clouds of chemicals like cigarettes. Would your argument or definition on smoking apply to asthma inhalers? The department's regulation would not apply to asthma inhalers. I know that because it was expressly exempted from the regulation. But the question is whether your definition of smoking would cover asthma inhalers. I assume the answer is yes because that's why you felt the need to. No, Your Honor, the exclusion for medical devices was a clarifying exclusion. Our definition is the use of a tobacco product, electronic cigarettes, or similar products. And the exclusion for medical devices was intended to make absolutely clear that medical devices which the department is required to permit passengers to bring on board are certainly not prohibited under the smoking ban. And there's some indication, at least in the news reports, that these cigarettes can cause fires. But the agency didn't rely on that, right? No, Your Honor. There are separate regulations. Electronic cigarettes can't be put in checked bags because of lithium battery concerns. But this has not been promulgated pursuant to fire concerns. That's correct. It is promulgated based on the clearer purposes of the statutory smoking prohibition and based on passenger discomfort, which, as Judge Ginsburg mentioned, there is ample evidence in the record of consumer discomfort and consumers who have suffered direct effects from these devices. In addition to Ms. Schiller, there are also comments from, for example, a train passenger who felt a burning in his or her chest when someone was using electronic cigarettes a few rows back. That's comment 649. There is also comments that people whose friends or sons use electronic cigarettes are bothered by the odor, comments 135 and 268. A former user who said that his loved ones couldn't stand it, comment 402. And there are also comments reflecting that passenger discomfort is particularly intense in light of what we know now about electronic cigarettes. Passengers have expressed that they do not want to repeat history by becoming part of the experiment that reveals the harms of secondhand exposure to electronic cigarettes. We have done that, and passengers have very reasonable concerns about the health effects and about the direct effects of inhaling the aerosol from electronic cigarettes. Well, the answer to that, they would say, is Congress should pass a statute then. Congress did pass a statute. Yeah, but they considered specific e-cigarette statutes and have not enacted those, correct? There were legislative proposals, Your Honor, and on those we have two responses. Assuming that we can discern anything from Congress's decision not to enact a statute, it's just as likely that Congress believed that electronic cigarettes were already encompassed within the statutory smoking prohibition. Now, I was just taking in your point on whether something's safe, but they don't want to be part of the experiment. But usually, as Judge Randolph says, you don't regulate something until there's some indication of harm. And the statutory term here is safe. And if there's no indication of harm yet. We're actually relying, Your Honor, on the adequate provision, the adequate part of that statute, and that's what this court relied on in actions smoking on the health. It said that the agency can regulate the quality of service or the quality of interstate air transportation. And contrary to Petitioner's argument, there is no meaningful distinction between those phrases. The language change was part of a 1994 recodification of the statute without substantive change. And this court upheld the board's authority to regulate smoking based on passenger discomfort where evidence showed that there was no harm to passengers based on secondhand smoke. Adequate allows you to regulate anything? This court held that the board has broad authority to regulate, to ensure quality service as a means of ensuring adequate service. This is the better safe than sorry principle, is that it? Your Honor, the agency should not have to wait until a passenger develops cancer from sitting next to a user of e-cigarettes flight after flight. The agency has taken a precautionary approach. We'd urge this court to uphold that and to deny the petitions for review. Okay. Thank you. Thank you. Your Honor, just a few very quick points. The CAB, one year after the action on smoking and health decision, noted in a policy statement on smoking that the board's judgment justifying a total ban, to justify a total ban that smoking aboard aircraft under the present rules, you would need a showing of significantly damaging the health of nonsmokers. That certainly exists for smoking. There is no showing of significant irritation, significant potential for irritation when it comes to e-cigarettes. But if you combine just the statutory term adequate with our precedent in action on smoking and health, that's a precedent that gives them a lot of room. It gives them a lot of room. It does not give them unlimited room. And as this court noted, validity of a regulation under that provision will be sustained so long as it is reasonably related to the purposes of the enabling legislation. We would dispute the notion that this is a reasonable relationship between the possibility of someone on some airplane using an e-cigarette and creating a significant impact on someone else. That's my first point. Secondly, on this notion of... But if it's just discomfort and there's people who say, I don't like it, it makes me uncomfortable, and you have this very expansive statutory term, adequate, and you have our precedent in the case, why isn't that good enough? Because adequate does not mean superlative. Adequate does not mean the most comfortable. Adequate can still allow room for the fact that certain interactions occur between passengers which are not a function of DOT to regulate. Adequate is such a potentially expansive term, and you might have separate arguments about Congress is unwise to give that kind of broad delegation to agencies, but it's a very expansive term. We would submit that if the FAA began a rulemaking on whether people who drink too much on a plane start exuding certain chemicals in their bodies that bothers other folks. That definitely happens. That definitely happens, but I would hope it should not happen as a rulemaker. Secondly, on the statutory question, the notion that we now have a new type of smoking, that e-cigarettes that function like cigarettes and that are used like cigarettes, that sounds very much like a claim that these are the functional equivalents of cigarettes. The Supreme Court in its 1986 ruling in the Board of Governors of the Federal Reserve versus Dominion Financial held that a statute that gives authority to regulate banks does not give authority to regulate the functional equivalent of banks. There is a distinction between the two. Congress legislated on the first, not on the second. You should not have that expansion. Let me phrase it this way. You're not challenging any foreign ban, are you? The ban is applied to foreign flights? No. Finally, if this Court is inclined to what the statute on the foreign carriers, if the foreign government objects to the ban on e-cigarettes, then it doesn't apply to flights into the United States, is that correct? I believe there is some mechanism for working out of objections like that. I'm not sure just what the details of it are. But let me stress, if this Court is inclined to accept the safe and adequate provision as a sufficient basis for this ban, we would urge you to nonetheless go on and rule that the agency's approach to the statutory question is invalid. To the smoking question, you mean? To the smoking question. Why would we do that? Because when you have an agency can always change a discretionary regulation on the basis of new facts. Here you've got an agency that is basing a good part of what it's doing on its interpretation of a statute. And getting an agency to change a statutory interpretation on the basis of new facts is much, much more difficult, if not impossible. Suppose we said hypothetically we uphold it on the basis of the safe and adequate provision. We don't pass judgment one way or another on the definition of smoking. Then there's a problem if CASA or CEI or some other group that favors opportunities to use e-cigarettes were to approach FAA, DOT, with new studies, which make an even stronger case for the safety of e-cigarette use to bystanders. But the other problem for DOT is that if we did what Judge Kavanaugh suggests, then the ban on e-cigarettes would apply only to domestic flights. Well, if that's the situation and it cannot be resolved, I think it rests in Congress' hands. But right now, DOT's interpretation of the no smoking provision stands really as an absolute bar to any rulemaking petition, to any reconsideration of the facts. And that sort of violence to language is simply that it should not pass muster in this court. Okay. Thank you very much. The case is submitted.
judges: Kavanaugh, Ginsburg, Randolph